## BINNS *v.* FICKLEN.

That portion of the act of 1905, establishing the city court of Washington in the county of Wilkes, which provided, that for all convicts from said court taken charge of by the county authorities and by them put to work on the public works, the county authorities should pay into the county treasury such sum for the hire of said convicts as the judge of the city court and the county authorities might agree upon, and which should be reasonable and just, that upon failure to agree, the sum fixed by the judge should be paid, that the county authorities might decline to receive them at the sum so fixed, and in that event the judge of the city court should dispose of them as is or may be provided by law, and that the treasurer should pay the hire of said convicts to the

proper officers of the city court, upon the order of the judge thereof,. is in violation of that provision of the constitution of the State which declares that "laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law."

Submitted January 6,—Decided March 26, 1908.

Petition for mandamus. Before Judge Worley. Wilkes superior court. November 7, 1908.

. *R. C. Norman,* for plaintiff. *William Wynne,* for defendant.

LUMPKIN, J. Binns, as clerk of the city court of Washington,. for the use of himself, and for Norman, solicitor, and Bobo, sheriff, brought his petition praying for a mandamus against Ficklen, the county treasurer of Wilkes county, to compel the latter to pay an order which had been drawn on him by the judge of the city court of Washington for the payment of certain convict hire alleged to be due by the county on account of the labor of a misdemeanor convict sentenced to the county chain-gang by the judge of the city court of Washington, and which it was claimed should be paid for the use of the officers of court. The defendant set up that the provision of the act of 1905, establishing the city court of Washington, under which the order was drawn, was unconstitutional. The presiding judge, to whom the case was submitted without the intervention of a jury, sustained the defense and refused to make the mandamus absolute. The petitioner excepted.

Under section 40 of the act of 1905 (Acts 1905, p. 411), the judge of the city court of Washington made an agreement with D. S. Standard, as county commissioner, on October 26, 1906, that, for "one year from date, the price to be paid by the County of Wilkes for able-bodied convicts sentenced to the county chain-gang from the said city court of Washington shall be ten dollars per month." On the trial of the case it was admitted, that the County of Wilkes had an established chain-gang, that its business and affairs were conducted by a legally elected commissioner of roads, and revenues, and that this was true when the agreement was made. A person found guilty of two offenses was sentenced to serve twelve months under each conviction, in the county chain-gang. The clerk, for the use of the officers of court, made out an account claiming the aggregate of $240 as hire due from the county. The presiding judge approved the account and ordered it paid, and a

refusal by the county treasurer to pay it caused the present proceeding to be brought.

The controlling question is whether that part of section 40 of the act of August 9, 1905, under which the contract was made by the presiding judge of the city court of Washington with the county commissioner, and under which he ordered the county treasurer to pay the agreed amount of hire for the use of the officers of court, is unconstitutional on the ground that it is a special provision for the payment by the county of hire for misdemeanor convicts sentenced to its chain-gang, when there already exists a general law authorizing county authorities to work such convicts without the payment of hire.

By the act of 1874 (Acts 1874, p. 24) and later acts provision was made in regard to working misdemeanor convicts sentenced to labor in the chain-gang. These provisions were codified in 1895, in section 1137 and following sections of the Penal Code. That section reads as follows: "When misdemeanor convicts are sentenced to work in a chain-gang on the public works or roads, or are confined in jail for non-payment of fines, the ordinary, county judge, or board of commissioners, of the county where the convictions were had or where the convicts are confined, may place them, in the county or elsewhere, to work upon the public works of the county, in chain-gangs or otherwise." This is the general law. There is nothing in it authorizing or requiring a charge to be made against a county for the labor of misdemeanor convicts sentenced by the courts in such county to work in its chain-gang. In *Pulaski County* v. *DeLacy,* 114 *Ga.* 583, it was held that "A county is not liable to the officers of court who rendered services in the trial and conviction of persons charged with a misdemeanor, for the value of the labor of such convicts while worked and confined on a chain-gang established by the county in which such persons are convicted." In that case the convictions took place in the superior court, but, with reference to the right of a county to work its misdemeanor convicts without paying hire for them to the officers of court, there is no difference in principle whether the conviction took place in a superior court or other court having jurisdiction to sentence persons to the county chain-gang. These chain-gangs are a part of the general penal system of the State. · As such, under the act of 1897 and acts amendatory thereof, the prison commission has su-

pervision over county chain-gangs. Acts 1897, p. 72, sec. 6; Acts 1903, p. 67, sec. 2. Such being the general law in regard to the control and management of misdemeanor convicts, is the provision made by the act creating the city court of Washington in conflict therewith? The constitution declares that "laws of a general nature shall have uniform operation throughout the State, and no special law shall be enacted in any case for which provision has been made by an existing general law." Art. 1. sec. 4, par. 1 (Civil Code, §5732). In 1905 the city court of Washington, as it formerly existed, was abolished, and there was established a new "city court of Washington, in and for the county of Wilkes," having civil and criminal jurisdiction over the whole county. It was provided that all indictments for misdemeanors within the jurisdiction of that court should be transmitted to it from the superior court by order of the presiding judge; and prosecutions for misdemeanors were authorized by accusations in the city court. Thus the new court, as to its criminal jurisdiction, became practically the court for the trial of misdemeanors in Wilkes county. Section 40 of the act establishing the court contained the following provisions material to the present inquiry: "For all convicts from said city court taken charge of by the county authorities and by them put to work on the public works of said county, the said county authorities shall pay into the county treasury of said county such sum for hire of each of said convicts as the judge of said city court of Washington and said county authorities may agree upon, and that is reasonable and just, and upon their failure to agree, the sum fixed by said judge shall be the sum paid; provided, however, the county authorities may decline them at the sum so fixed by said judge, in which event, and in the event the county authorities for any other reason shall cease to work said convicts, then the judge of said city court shall dispose of them as is or may be provided by law. The treasurer of said county shall pay the hire of said convicts to the proper officers of said city court upon the order of the judge of said court." It needs but a casual inspection of the portion of the act quoted to show that it is not only a special provision in regard to the disposition of misdemeanor convicts in Wilkes county, but also that it is in direct conflict with the general law. Under the general law, county authorities do not have to pay for misdemeanor convicts sentenced to the county chain-gang. Under this law they

are required to do so. Under the one, misdemeanor convicts sentenced to the county chain-gang are received and controlled by the ordinary, county judge, or board of commissioners. Under the other, the county authorities can not receive or control such convicts, except upon the payment of such hire as they may agree upon with the judge of the city court, or as he may fix. If they are unwilling to pay the amount so fixed, the judge of the city court shall dispose of such convicts "as is or may be provided by law." This, of course does not mean by delivering them to the county authorities without payment of hire, for the very purpose of the act was to require such payment. It probably means that the judge of the city court, in such contingency, may hire the convicts elsewhere.

It was urged that article 6, section 9, paragraph 1, of the constitution (Civil Code, §5859) declares, that "The jurisdiction, powers, proceedings and practice of all courts or officers invested with judicial powers (except city courts), of the same grade or class, so far as regulated by law, and the force and effect of the process, judgment and decree by such courts, severally, shall be uniform;" and that this exception of city courts also extends to the method of control of misdemeanor convicts sentenced therein, and authorizes the provision of the act of 1905 in regard to the city court of Washington. We can not assent to this contention. If this exception of city courts from the general law of uniformity as to jurisdiction, powers, proceedings, and practice in courts of the same grade or class were held to authorize special acts providing for the disposition and management of misdemeanor convicts sentenced in city courts, in a manner entirely different from that provided by the general law, why might it not as well be said that, by special enactment, persons convicted of misdemeanors in the city court of Washington might be removed entirely from the supervision and control of the prison commission? The existence of local or special laws prior to the constitution of 1877, although general laws on the subject might also have existed, throws no light on the question here discussed. Neither does the fact that the constitution did not repeal pre-existing valid local and private acts not inconsistent with it. Civil Code, §5935. The briefs of counsel for the plaintiff in error contain some references to the method of payment of insolvent costs, and also to some city courts said to have limited jurisdiction. Neither of these matters is now before us, and we decide

nothing in regard to them.    Nor do we discuss any provisions of law as to working misdemeanor convicts within a municipality. The question before us is as to the validity of that portion of the act of 1905 which sought to require the county authorities of Wilkes county to pay hire for misdemeanor convicts sentenced to the county chain-gang, in order to be allowed to control and work them.    We hold, that such provision was unconstitutional; that the agreement by the county commissioner to pay such hire was invalid; and therefore the mandamus absolute was properly denied.    *Sapp* v. *DeLacy,* 127 *Ga.* 659; *Houston County* v. *Killen,* 76 *Ga.* 826.

*Judgment affirmed.    All the Justices concur.*