HUTCHESON *v.* MANSON, ordinary.

The fact that an ordinary whose official duty it was to hire out certain misdemeanor convicts, and to collect and disburse the hire for the same, has, after hiring them out and collecting the hire, wrongfully disbursed the fund thus received by him, will not prevent a mandamus absolute from being granted for the purpose of compelling him to pay over to the applicant for the writ an amount of money which it was the legal duty of the ordinary to pay him from such fund.

Submitted February 14,—Decided August 13, 1908.

Mandamus. Before Judge Roan. Clayton superior court. January 18, 1908.

*J. W. Wise* and *Joseph W. & John D. Humphries,* for plaintiff.
*W. L. Watterson,* for defendant.

Fish, C. J. John B. Hutcheson brought a petition for mandamus against Z. T. Manson, as ordinary of Clayton County. The petition alleged, that during the year 1905 the petitioner held the office of solicitor of the city court of Jonesboro, and during that year, in the discharge of his official duties, prosecuted to conviction, for misdemeanors, four named persons, and they were all sentenced by the court to work in prison or on the chain-gang, the terms for which they were, respectively, sentenced being stated; that each of these convicts was hired out by the defendant ordinary for the full term for which such convict was sentenced, and the full amount of the hire, in each case, was collected by the ordinary,

he thus receiving, in the aggregate, the sum of $668; that the petitioner had a balance due him of $335.10 on his insolvent orders, for insolvent fees which had accrued to him in the discharge of his official duties in the city court of Jonesboro; and that he was "entitled to have his pro rata part of the hire of such convicts appropriated to the payment of said insolvent fees;" that, on a named date, he had presented his claim for such fees to the ordinary, "and demanded that his pro rata part of the money arising from the hire of said convicts be paid upon his claims, but his demand was refused." Alleging that he was without other remedy to enforce his rights, he prayed that the ordinary be compelled by mandamus to pay him the sum that was due him. In his answer to the rule nisi, the ordinary admitted that the persons named in the petition as having been convicted had been convicted and sentenced for the terms alleged, but alleged that they were sentenced to work in the chain-gang of the county, or such other place as the ordinary might direct. He admitted the allegation as to his having collected the amount of hire of these convicts as alleged in the petition, but denied that the same or any part thereof was in his possession or control, at the time of filing his answer, or at the time when demand was made on him, or at the time when the petition for mandamus was filed; and alleged that the funds arising from the hire of these convicts had been paid out for work done on the public roads and bridges of the county, after paying to the petitioner and the other officers entitled thereto the costs which had accrued in each of these particular cases. He further alleged that he had been ordinary of the county for a number of years, and that all funds and money coming into his hands, arising from the hire of misdemeanor convicts, had, with notice to all the officers interested therein, been paid out in the same way, and none of them had ever claimed said money; and that all of them, including the plaintiff, at the time that the money arising from the hire of the convicts named in the petition had been paid out on the roads and bridges of the county, had full notice as to the use that was being made of it and made no objection to the same. He also alleged that his course in the matter was in accordance with the custom which prevailed in the county. The petitioner demurred to the answer, one ground of the demurrer being that the answer set up no defense that was good in law. The court

overruled the demurrer, and exceptions pendente lite were filed. When the case came on to be heard, in term, the court submitted certain questions of fact to the jury, and the jury returned a verdict in which they answered such questions. The petitioner made a motion for a new trial, upon the ground that the answer of the jury to one of these questions was contrary to the law and the evidence. This motion was overruled; and the court then denied the mandamus absolute and discharged the rule nisi. The petitioner sued out a bill of exceptions, wherein he complained of the rulings just recited.

The trial judge erred in not sustaining the demurrer to the defendant's answer. It was the duty of the ordinary, after hiring out the convicts and collecting the hire for the same, to disburse the funds so received by him. *Sapp* v. *DeLacy,* 127 *Ga.* 659 (56 S. E. 754), and cases cited. The ordinary recognized this to be his duty and did disburse the funds so collected and received, but, unfortunately for him, he did not do so in accordance with the law. "Under the Penal Code, §1097, the fund arising from the hire of misdemeanor convicts shall be first applied to the payment of the fees of the officers of court. This application is to be made by first taking from the hire the costs in the particular case, including the fees of witnesses; then discharging the orders of the officers of court for insolvent costs in other cases, and paying into the county treasury whatever balance may remain." *Barron* v. *Terrell,* 124 *Ga.* 1077 (53 S. E. 181). It being the official duty of the ordinary to so apply such funds, upon his refusal to do so performance of such duty could be compelled by mandamus. *Pulaski County* v. *DeLacy,* 114 *Ga.* 583 (40 S. E. 741). See also *Barron* v. *Terrell,* supra, in which the question decided as above indicated arose under a proceeding for mandamus instituted against the ordinary of a county. But the ordinary set up the defense that the funds which came into his hands from the hire of these misdemeanor convicts had all been disbursed by him; that he had paid therefrom the costs of the officers of court in the particular cases in which these convicts had been, respectively, convicted, and the balance of such funds had been paid out for work done upon the roads and bridges of the county; and that therefore no portion of such funds was in his possession or control. He further alleged that the funds were so disbursed by him with the knowledge of

the petitioner and without objection upon his part; but he did not allege that the petitioner did or said anything which induced him to so pay out these funds. So the simple question made by the answer of the ordinary was, whether mandamus would lie to compel him to pay the orders of the petitioner for insolvent costs, when the funds from which these orders should have been paid had been all disbursed by the defendant in violation of the law, and hence were not in his possession or within his control. In some jurisdictions inability upon the part of a public officer to pay or turn over funds which have come into his hands, to the person to whom it is his official duty to pay or deliver them, has been held sufficient to prevent his being required by mandamus to do so, even though his inability has been caused by his having paid out or disbursed such funds in violation of his duty under the law. In other jurisdictions a contrary rule has been enforced. The question in this State, however, can not now be considered an open one. In *Aaron* v. *German,* 114 *Ga.* 587 (40 S. E. 713), a county treasurer brought a petition for mandamus against the ordinary of the county, to compel him to turn over to the plaintiff the proceeds of the sale of certain bonds issued by the county, for the purpose of raising money with which to build a court-house. A portion of the fund raised by the sale of the bonds had been disbursed before the defendant ordinary came into office, by his immediate predecessor therein. After the defendant came into office, he collected the balance of such fund, and proceeded to pay therefrom various county orders which had been drawn by the former ordinary, in payment for work done in the erection of the court-house. Subsequently the plaintiff, as treasurer of the county, made a demand upon the defendant, as ordinary, for the gross amount of the proceeds of the sale of the bonds, which demand was refused, and shortly thereafter the treasurer brought his proceeding for mandamus, to require the defendant to pay over to him such gross sum, or at least that portion of it which actually went into the hands of the defendant. The trial judge granted a mandamus absolute as to the funds still remaining in the hands of the ordinary, but denied it as to the rest of the original fund. This court held, that as upon the theory presented by the plaintiff's petition, to which there was no demurrer, the ordinary was under a legal duty to turn over to the plaintiff, as treasurer of the county,

the portion of the fund which the defendant had collected as ordinary, he could be compelled by mandamus to do so; and that "The mandamus absolute, if granted at all, should have covered the whole amount for which [the defendant] was accountable, and not merely the balance which he retained in his hands after making an unauthorized disposition of the greater portion of the fund which he had collected." The headnote in the case is as follows: "One who has failed to comply with a duty imposed upon him by law, of paying over to another a particular fund to the custody of which the latter is entitled, is liable to account to him, not merely for such part of the fund as the former has retained in his hands, but also for any portion thereof of which he may have made an illegal disposition." Under that decision, it is clear that the fact that the ordinary did not have in his possession or control the funds which he had collected from the hire of the misdemeanor convicts, from which to pay petitioner's orders for insolvent costs, as solicitor of the city court, was no reason for denying a mandamus absolute, when it appeared that the ordinary had himself disbursed such fund in violation of the law. Consequently the case falls squarely under the ruling made in *Aaron* v. *German,* and the judgment overruling the demurrer to the defendant's answer must be reversed.

The statute requires the ordinary, after discharging the orders for insolvent costs, to pay over the balance to the county treasurer. Penal Code, §1097. The answer of the ordinary to the mandamus nisi set up that he expended the money himself. He had no authority to do so; and if thus the money was illegally expended, the ruling in the case of *Aaron* v. *German,* supra, applies. If, at the time of paying to the applicant his costs in the particular cases, the response set up and the evidence showed any case of legal or equitable estoppel (Civil Code, §§5150, 5152), as, for instance, if the law was susceptible of two constructions, and had not then been construed by the Supreme Court, but was the subject of different views, and if the applicant knew the construction placed upon it by the ordinary, and that under it the latter would proceed to pay into the county treasury the balance after deducting the particular costs, and acquiesced in his doing so, without objection, a different question might be presented, which we are not now required to consider or decide.

Of course, a new trial of the case necessarily results from our ruling, as the proceedings in the court below, after the erroneous overruling of the demurrer to the respondent's answer, were nugatory and void. *Judgment reversed. All the Justices concur.*